FILED

2026 Mar-05  PM 03:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GREGORY OGLES,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:23-cv-00835-RDP** |
| | } | |
| **CITY OF BIRMINGHAM,** | } | |
| | } | |
| **Defendant.** | } | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on Defendant City of Birmingham's ("the City") Motion for Summary Judgment (Doc. # 33) and Plaintiff Gregory Ogles' ("Ogles") Motion to Strike Evidentiary Material. (Doc. # 38). The Motions have been fully briefed. (Docs. # 33, 34, 38, 39, 40, 41, 42). After careful review, and for the reasons outlined below, the City's Motion for Summary Judgment (Doc. # 33) is due to be granted, and Plaintiff's Motion to Strike Evidentiary Material (Doc. # 38) is due to be denied.

## I.    Background

This is an employment discrimination case in which Plaintiff alleges that he was discriminated against by his employer, the City, based on his race, gender, and age when he was not promoted and allegedly was paid at a lower rate than his purported comparators. The facts set out by the court are gleaned from the parties' submissions and the court's own examination of the Rule 56 record. These are the "facts" for summary judgment purposes only. They may not be the facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff Gregory Ogles was born on November 16, 1971. (Doc. # 31-1 at 3). He identifies as a "mixed Caucasian, Native American" male. (*Id.* at 15-16; Doc. # 16 at 3). At the time the lawsuit was filed, Plaintiff was a Traffic Analyst employed by the City of Birmingham. (Doc. # 31-1 at 12). Plaintiff attended Auburn University from 1992 to 1999, initially pursuing a degree in mechanical engineering but later switching to math education. (*Id.* at 9-10). Plaintiff did not receive a degree from Auburn University, however, because he lacked two lower-level classes – a logic class and a statistics class – that he thought his prior engineering coursework would satisfy. (*Id.* at 9-10). As of the time the briefs were filed, Plaintiff had not finished his degree coursework. (*Id.* at 9-10).

Plaintiff began his career with the City in 2002 as a Traffic Planning Technician. (*Id.* at 10). During his tenure with the City, he has progressed to Senior Traffic Planning Technician, then Traffic Analyst, and most recently, as of August 2023, Senior Planner. (*Id.* at 12). During the time period at issue in this lawsuit, Plaintiff was a Traffic Analyst. (*Id.* at 12).

The compensation structure for employees of the City is set by the Personnel Board of Jefferson County ("PBJC") and the City. (Docs. # 31-2 at 13; 31-3 at 82-135). The PBJC deems each position to be a certain "pay grade," which determines the salary for employees holding that position. (Doc. # 31-2 at 13). Within each pay grade are "steps" and "premium steps," which are incremental raises that can be earned within the pay grade. (*Id.*). A supervisor has no discretion over what pay grade a specific position is assigned but retains limited discretion over the step each employee is placed. (*Id.*).

A Traffic Analyst is paid at a grade of twenty-two. (Doc. # 31-1 at 12). At the time the lawsuit was filed, Plaintiff was at premium step two of pay grade twenty-two, meaning that he had

nearly maximized his pay in the Traffic Analyst position. (*Id.* at 22). He had received the premium steps from his supervisors for taking on additional responsibilities. (*Id.* at 22).

There are several steps in the City's hiring process. The PBJC is responsible for establishing job descriptions, minimum qualifications, and the pay grade for classified positions. (Doc. # 31-2 at 13). They are further responsible for posting job vacancies, accepting applications, reviewing qualifications, and creating a Certificate of Eligibles, which is a list of eligible candidates the City may consider. (*Id.* at 26, 32-33). Although the City may only consider candidates from the Certificate of Eligibles, it remains the final hiring decisionmaker. (*Id.* at 26-27). The City determines which of the candidates from the Certificate of Eligibles to interview, and those candidates are then interviewed by a multi-person panel. (*Id.* 9-10). The applicant with the highest score across the interviews is offered the position. (*Id.* at 43). James Fowler ("Fowler"), the Director of the City of Birmingham Department of Transportation and City Engineer, was the relevant decisionmaker for the hiring of a Traffic Systems Engineer ("TSE"). (*Id.* at 43).

Plaintiff applied for a TSE position. (Doc. # 31-2 at 249). Under PBJC guidelines, a TSE is paid at a grade of twenty-six, and a bachelor's degree in civil engineering, electrical engineering, computer engineering, or a closely related field is required for the position.[1] (Doc. # 31-2 at 99). Plaintiff had been performing several functions of the TSE role up to and after the retirement of Zeke Willis (formerly a TSE and Plaintiff's supervisor) but maintained his Traffic Analyst title. (Doc. # 31-2 at 19-22). Plaintiff received premium pay for assuming these extra responsibilities. (*Id.* at 19). However, even though he had assumed some TSE responsibilities, Plaintiff still lacked a college degree, a requirement for the TSE position. (Doc. # 31-1 at 9-10).

---

[1] Individuals who would obtain their bachelor's degree within six months were also qualified for the position. (Doc. # 31-2 at 99).

Amy Zari, a twenty-two-year-old woman[2] with a college degree, was hired for a TSE position on October 20, 2020 and held informal supervisory authority over Plaintiff. (Docs. # 31-1 at 13-14; 31-2 at 24). Zari was formerly an intern with the City and was hired upon the completion of her degree from the University of Alabama at Birmingham. (Doc. # 31-2 at 154). Plaintiff was not considered for that position. (Doc. # 31-2 at 24).

In the fall of 2021, the PBJC posted another TSE job opening,[3] and Plaintiff applied. (Doc. # 31-2 at 249). Between Zari's hiring and the fall of 2021, the City hired two other individuals as TSEs: Samuel Parsons, a twenty-seven-year-old white man (November 23, 2020 start date) and Kenneth Williams, a sixty-five-year-old black man (October 11, 2021 start date). (*Id.* at 112-13). During Plaintiff's application process, the City also hired Mukti Patel, a twenty-six-year-old Asian American man, as a TSE. (*Id.* at 112-13). Plaintiff's second application was initially denied by the PBJC because he did not have a bachelor's degree. (*Id.* at 249). However, Plaintiff appealed this determination based on his experience and continuing education efforts. (*Id.* at 249). As a result, his name was placed on the Certificate of Eligibles by the PBJC to be considered for an interview in November 2021. (*Id.* at 249; Doc. # 40 at ¶ 42 (undisputed)). The City elected not to interview Plaintiff and ultimately hired Eliza Bigham, a twenty-four-year-old white woman with a college degree[4] and a Master's Degree in Engineering Management. (Doc. # 31-2 at 29, 112-13, 182).

---

[2] The City's internal documents identify Ms. Zari as Asian-American, but Fowler testified that he thinks Amy Zari was mixed-race, although he is not sure. (Doc. # 31-2 at 47, 112).

[3] The PBJC was responsible for creating job postings. However, Fowler testified that the City would often promote the job postings through relationships with universities, social media posts, and outreach to professional engineering organizations such as the Institute of Transportation Engineers, the Congress for New Urbanism, and likely the American Planning Association. (Doc. # 31-2 at 33).

[4] It is undisputed that everyone selected to interview from the Certificate of Eligibles possessed a bachelor's degree. (Docs. # 34 at ¶ 40 (undisputed); 31-2 at 44).

4

Plaintiff asked Fowler why he was not promoted. (Doc. # 31-2 at 36-37). Fowler told him that he would not be promoted to TSE because he does not have the requisite bachelor's degree. (*Id.*). When Plaintiff pressed Fowler with the fact that the PBJC had included him on the Certificate of Eligibles, Fowler responded that the PBJC had concluded that Plaintiff could be considered; however, he later testified that he elected not to interview Plaintiff because he did not have a bachelor's degree and believed that the PBJC would not have placed Plaintiff on the Certificate of Eligibles if they reviewed his application again. (*Id.*).

Sunny Desai, a twenty-six year old Asian-American man was hired as a TSE with a start date of January 31, 2022. (*Id.* at 112-13). On March 30, 2022, Plaintiff submitted a written complaint to the City, complaining that he had been denied the TSE position for discriminatory reasons. (*Id.* at 247-50). Plaintiff challenged the City's degree requirement for the TSE position and its application to him. (*Id.* at 247-50). Fowler, while testifying as a Rule 30(b)(6) deponent for the City, stated that he did not recall what, if anything, was done to investigate and take further action on Plaintiff's complaint. (*Id.* at 35).

Plaintiff was once again included on a Certificate of Eligibles for a TSE position but was not selected for an interview. (Doc. # 31-2 at 216). The City instead selected Hillory Hughes, a thirty-eight-year-old white woman with a bachelor's degree, for the TSE position with a start date of June 6, 2022. (Doc. # 31-2 at 112-13, 221). Hughes was hired at a grade twenty-six, step five.[5] (*Id.* at 225).

In his Amended Complaint, Plaintiff has asserted a disparate pay claim, alleging that those hired for the TSE position were making more than him as a result of discrimination. (Doc. # 16 at

---

[5] When asked why Hughes was hired at a step five, Fowler responded that he did not recall. (Doc. # 31-2 at 54).

19-25). To be clear, Plaintiff's claim is not that he made less than other similarly situated Traffic Analysts on account of his age, gender, or race. (*Id.*). Rather, he claims that because he was paid at a grade twenty-two as a Traffic Analyst and not a grade twenty-six as a TSE, he was receiving disparate pay from those who were ultimately selected for the TSE position. (*Id.*; Doc. # 40 at 25-26). The payroll records reflect that Plaintiff, as a Traffic Analyst, was being paid at a grade twenty-two, premium step two ($35.65 per hour or $74,152 annually). (Doc. # 31-3 at 2, 105, 248-305). Amy Zari, Eliza Bigham, and Hillory Hughes – who Plaintiff has identified as comparators – were hired at a low-to-mid step within grade twenty-six and made less than Plaintiff at the time of their hires. (*Id.* at 3). Hughes, who was hired at a grade twenty-six, step five would have made $32.33 per hour under the 2022 guidelines. (*Id.* at 132, 203-16). Zari was hired at step three, making $57,220 annually in 2020. (Docs. # 31-2 at 154). Bigham was hired at step four, making $29.33 per hour at her time of hire. (Doc. # 31-2 at 187).

In addition, Plaintiff alleges that Fowler made several statements that would tend to suggest he favored younger employees. Such statements include praising older employees for retiring or remarking that he was pleased they retired. (Doc. # 31-1 at 9). Other examples include creating relationships with universities to hire students directly out of school rather than hiring from within. (Doc. # 31-1 at 19-20). Plaintiff also argues that Defendant's use of social media for recruiting purposes evidences a preference for younger applicants. (Doc. # 31-2 at 33). The City, on the other hand, claims that Plaintiff made a culturally insensitive reference at work. That is, the City notes that Plaintiff displayed a Star of David as a Sherriff's star in a project for local police departments. (Doc. # 34 at ¶ 20). The parties contest these allegations, but their truth or falsity is only relevant to the extent that Plaintiff attempts to show a convincing mosaic of circumstantial evidence of discrimination. Notably, when asked whether he could identify any specific examples of Fowler

discriminating against men, Caucasian, or Native American individuals, Plaintiff could not. (Doc. # 31-1 at 19).

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id*. at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty*., 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249.

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *United States v. Four*

*Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (internal quotation marks omitted). "Upon making this showing, the burden shifts to the non-moving party, who must produce 'significant, probative evidence demonstrating the existence of a triable issue of fact' to avoid summary judgment." *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1438). That is, the moving party must demonstrate that, on all the essential elements on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Four Parcels of Real Prop.*, 941 F.2d at 1438 (alteration in original) (quoting *Chanel, Inc.*, 931 F.2d at 1477); *see also* Fed. R. Civ. P. 56(e).

## III.    Discussion

Plaintiff's Amended Complaint asserts claims under Title VII, ADEA, and 42 U.S.C. § 1981 via 42 U.S.C. § 1983. (Doc. # 16). Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA makes it illegal for an employer to fail or refuse to hire any individual, or limit, segregate, classify, or reduce the wage rate of any employee "*because of* such individual's age." 29 U.S.C. § 623 (emphasis added). Section 1981 prohibits "intentional race discrimination." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999) (describing 42 U.S.C. § 1981).

In cases arising under § 1981, discrimination can be established only under a single-motive theory. *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1321 (11th Cir. 2023). Stated differently, to succeed on a § 1981 claim, a plaintiff must show that his race was the sole but-for cause of the

adverse employment action. *Id.* Similarly, the United States Supreme Court has held that a plaintiff bringing a disparate-treatment claim under the ADEA must prove that "age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (explicitly rejecting the use of the mixed-motive theory in ADEA cases). A Title VII claim, however, may be brought under a single-motive or a mixed-motive theory. Under a single-motive theory, "the employee alleges that unlawful bias was the 'true reason' for an adverse employment action." *Phillips*, 87 F.4th at 1321. Under a mixed-motive theory, the employee "alleges that bias was simply '*a* motivating factor' for the adverse action, 'even though other factors also motivated the practice.'" *Id.* (quoting 42 U.S.C. § 2000e-2(m)) (emphasis in original).

Single-motive and mixed-motive discrimination claims can be established with either direct or circumstantial evidence. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-102 (2003)). "Direct evidence of discrimination is 'evidence which, if believed, would prove the existence of fact in issue without inference or presumption,'" while "[c]ircumstantial evidence is evidence that suggests but does not prove a discriminatory motive." *Cromartie v. Cent. Ala. Food Servs.*, 2023 WL 5197872, at *5 (M.D. Ala. Aug. 11, 2023). Plaintiff asserts both single-motive and mixed-motive Title VII claims based on allegations of race and sex discrimination and seeks to support the claims with circumstantial evidence. He also asserts a single-motive claim of age discrimination and seeks to support that claim with circumstantial evidence.

A plaintiff may survive summary judgment on a discrimination claim by relying on the *McDonnell Douglas* framework or the convincing mosaic standard. *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Under *McDonnell Douglas*, a plaintiff "must carry the initial burden under the statute of

establishing a prima facie case" of discrimination. 411 U.S. at 802. Once the plaintiff establishes his prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If a defendant is unable to articulate a legitimate, non-discriminatory reason, then the plaintiff is entitled to summary judgment. *Ismael v. Roundtree*, 2025 WL 3492930, at *8 (11th Cir. Dec. 5, 2025). However, if the defendant successfully rebuts the presumption of discrimination, "the court must proceed to ask whether 'the record, viewed in a light most favorable to the plaintiff, presents [evidence of pretext or] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination . . . by the decisionmaker.'" *Id.* (quoting *Smith*, 644 F.3d at 1328). The convincing mosaic theory is simply an application of the summary judgment standard in the employment context. *Id.* at *5 ("[W]e have made clear that the 'convincing mosaic' analysis – despite its flowery language – is a stand-in for the Rule 56 summary judgment standard applied to employment discrimination."). Plaintiff brings a failure to promote claim and a pay disparity claim, each of which he contends is supported by a convincing mosaic of circumstantial evidence. The court analyzes each claim, in turn.

### A.    Failure to Promote

#### i.    *McDonnell Douglas* Test

Plaintiff alleges that the City failed to promote him to the TSE position because he was a member of a protected category. "To establish a prima facie case of discrimination in the denial of a promotion a plaintiff may present evidence that (1) he 'belonged to a protected class,' (2) 'was qualified for and applied for a position that the employer was seeking to fill,' (3) 'despite qualifications, he . . . was rejected,' and (4) 'the position was filled with an individual outside the

protected class.'" *Tolbert v. Briggs & Stratton, Corp.*, 256 F. App'x 340, 342 (11th Cir. 2007) (quoting *Vessels v. Atlanta Indep. Sch. Dist.*, 408 F.3d 763, 768 (11th Cir. 2005)).

Plaintiff identifies as a mixed-race Caucasian and Native American male.[6] Additionally, Plaintiff was born in 1971, making him over the age of forty (40) at the time this case was filed. Each of these characteristics qualifies Plaintiff as a member of a protected class under the statutes under which he brought this claim. *See* 42 U.S.C.A. § 2000e-2; 42 U.S.C. § 1981; 29 U.S.C. § 631(a). Thus, Plaintiff meets the requirements of prong one. Plaintiff was rejected from the TSE position several times and meets the 'rejection' requirement of prong three.[7] Prong four requires Plaintiff to prove that the position was filled with an individual outside the protected class. *Tolbert*, 256 F. App'x at 342. Plaintiff claims discrimination based on his membership in three protected classes: 1) mixed-race individuals;[8] 2) men; and 3) individuals above the age of forty. (*See* Doc. # 40). In the relevant time period, the City hired four men for TSE positions:[9] Samuel Parsons, Kenneth Williams, Mukti Patel, and Sunny Desai. (Doc. # 31-2 at 112-13). Williams was also sixty-five years old when he was hired for the TSE position, meaning that an individual *older* than Plaintiff was hired. (*Id.*). It is unclear, however, whether the City hired a mixed-race individual for the TSE position. (Doc. # 31-2 at 47). Therefore, Plaintiff would only satisfy prong four as to his race discrimination claim.

---

[6] The City asserts that it was unaware of Plaintiff's status as a mixed-race individual, but Plaintiff alleges that he often spoke about his Native American heritage in the workplace. (Docs. # 31-2 at 35-36; 31-1 at 16).

[7] Plaintiff's qualification for the position is an inherent requirement of prong three, which the court examines further below.

[8] Fowler testified that he believed Plaintiff to be Caucasian. (Doc. # 31-2 at 35-36). Plaintiff suggests that there are competing inferences as to Fowler's perception of Plaintiff.

[9] Plaintiff attempts to distinguish the "city hall" TSE positions from the "6th Street" TSE positions. Each of the men hired in the relevant time period were hired for the 6th Street location. However, since both are hired by Fowler, perform the same functional job responsibilities, and are selected via the same hiring process (and from the same Certificates of Eligibles), newly hired TSEs at both locations are relevant to analyzing Fowler's hiring practices. Furthermore, TSEs at each location receive the same pay and benefits.

Where Plaintiff's claims fall short is under the second prong. Although Plaintiff asserts three separate claims, and each claim has its unique proof requirements, one common denominator of those claims is that Plaintiff must show that he was qualified for the position. In other words, whether analyzing his Title VII claim, his Section 1981 claim, or his ADEA claim, to succeed on any of those, Plaintiff must show he was qualified to hold a TSE position. For efficiency reasons, the court will analyze whether Plaintiff is qualified and not repeat that analysis of the three claims.

It is undisputed that Plaintiff applied for a TSE position (Doc. # 40 at ¶ 40 (undisputed)), and that Plaintiff was never offered a TSE position. (Doc. # 40 at ¶¶ 37, 44, 68 (undisputed)). It is also undisputed that a bachelor's degree – or a plan to obtain one within six months – was required for a TSE position. (Doc. # 34 at ¶¶ 37, 39, 40 (undisputed)). And, it is undisputed that Plaintiff, despite nearly completing his bachelor's degree at Auburn University, did not hold a bachelor's degree at the time he applied for a TSE position and did not affirmatively state that he planned to complete his degree. (Doc. # 34 at ¶¶ 58-59). To be sure, Plaintiff disputes the purpose of the degree requirement and argues that it is pretext for discriminatory intent. But, there is no doubt based on the Rule 56 evidence that there was a bachelor's degree requirement for a TSE position, Plaintiff did not have a bachelor's degree or immediate plans to obtain one, and everyone interviewed and hired for the position did. Nor is there any evidence it has been selectively applied in the past. Thus, Plaintiff's claim fails for this reason.

Plaintiff contends that he was qualified for a TSE position because he had assumed some of the position's job functions. He also contends that when the PBJC eventually placed him on the list of candidates that could be considered for a TSE position, that made him qualified for the position. A party opponent's second guess that a bachelor's degree need not exceptionally – or even adequately – perform the TSE role does not move the needle. The PBJC had determined,

before Plaintiff ever applied for the position, that a bachelor's degree was required. Therefore, the fact that Plaintiff does not possess a bachelor's degree renders him unqualified for the position.

### ii.    Convincing Mosaic

Even where a plaintiff cannot satisfy the *McDonnell Douglas* framework, our circuit requires that the district court determine whether there is a "convincing mosaic" of evidence of discrimination. *Smith*, 644 F.3d at 1328. "The convincing mosaic approach is—in its entirety— the summary judgment standard." *McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024); *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023) ("A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit."). "[G]eneral evidence of discriminatory animus can create an inference that discrimination played a role in a particular case." *McCreight*, 117 F.4th at 1334 (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354 (11th Cir. 1999)). "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) 'systematically better treatment of similarly situated employees,' and (3) pretext." *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019)).

However, "presenting sparse examples of an employer's animus toward a particular group is not enough on its own—a plaintiff also needs evidence connecting that animus to the adverse employment action against [him]." *McCreight*, 117 F.4th at 1334 (citing *Rojas v. Florida*, 285 F.3d 1339 (11th Cir. 2002)). Plaintiff contends that there is sufficient evidence that would allow a reasonable jury to determine he had been intentionally discriminated against based on his age, sex,

13

and race. The City contends that no evidence supports a finding of intentional discrimination by the decisionmaker, Fowler. The court evaluates the circumstantial evidence supporting each of Plaintiff's claims below.

### a.    ADEA Age Discrimination Claims

To support his age-discrimination mosaic argument, Plaintiff alleges that he "presented evidence that Fowler's promotional and hiring decisions as it related to the TSE focused, for the most part, on people under forty." (Doc. # 40 at 18). Specifically, Plaintiff points to the hiring of Amy Zari, Eliza Bingham, and Hillory Hughes to the City Hall TSE positions as relevant evidence. Plaintiff also claims that Fowler gave preferential treatment to younger employees by giving them "nicer offices, equipment, training trips, and other job opportunities." (Doc. # 40 at 19). Plaintiff claims that Fowler's decision to focus his recruiting efforts on universities and social media, rather than professional organizations for traffic engineers, is circumstantial evidence of age discrimination. (*Id.*). Plaintiff also points to an alleged comment from Fowler celebrating an older employee's decision to retire. (*Id.*). And, he argues that Fowler's failure to try to follow up with Plaintiff as to whether he had obtained a college degree in 2021-22 constitutes evidence of discrimination. (*Id.*). The court addresses each of these points, in turn.

First, Plaintiff attempts to differentiate between the TSEs at City Hall and 6th Street. However, the TSE position performs the same function regardless of location. The selection process is the same. The candidates are selected from the same Certificate of Eligibles.[10] And, the TSEs at each location are all ultimately selected by Fowler. (Doc. # 31-2 at 7-8, 30). Individuals at each location are paid the same and receive the same employment benefits. (Doc. # 31-2 at 47). The only difference in the focus of their work is that City Hall TSEs focus more on roadway design,

---

[10] Plaintiff appears on the Certificate of Eligibles from which Kenneth Williams was ultimately selected. (Doc. # 31-2 at 95). Sunny Desai, Mukti Patel, and Eliza Bigham all appear on the same certified list. (*Id.* at 87).

traffic signals, and lighting, and 6th Street TSEs focus on sideways, asphalt, roadway surfaces, bridges, and utilities. (*Id.* at 7-8). Thus, since Plaintiff's claims hinge on an alleged mosaic of discriminatory behavior by Fowler, the City's hiring mosaic in its entirety is probative. The court notes that Kenneth Williams, who is older than Plaintiff and possessed the requisite bachelor's degree, was hired for a TSE position. (Doc. # 31-2 at 112-13). While the hiring of one individual does not necessarily absolve the City of any age discrimination motives, it is relevant to Plaintiff's argument that older candidates are unable to obtain TSE positions.

Plaintiff alleges that Fowler systematically treated younger employees better than older employees. The sole evidence that Plaintiff points to in support of this assertion is an affidavit he submitted himself in response to Defendant's Motion for Summary Judgment. He states that "discrimination continues today as the young employees are afforded nicer office equipment, go on extended 'training' trips outside the state, office schedules have been changed that only adversely affects (*sic.*) people over 40, and [his] office was 'downgraded' to a smaller office while young employees were allowed to keep their large office (Forrest Johnson)." (Doc. # 39-1 at 4-5 ¶ 3f).

At the summary judgment phase, the non-movant must be able to point to Rule 56 evidence that would tend to create a genuine issue of material fact. He cannot, however, rely on broad allegations that are unsupported by other evidence. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). The so-called evidence referred to by Plaintiff is a subjective statement in his affidavit that is wholly uncorroborated by any additional record evidence. For example, there is no deposition testimony from other employees, office floorplan layouts, itineraries from training trips that included younger employees, or any other evidence to

support Plaintiff's subjective views. Without any supporting evidence, Plaintiff's affidavit alone is functionally the same as an allegation set forth in the complaint. Unsubstantiated allegations are insufficient to show a genuine issue of material fact, which is necessary to survive summary judgment. *See id.* ("[S]tatements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment."). Thus, without additional record evidence, Plaintiff has not shown that younger employees received preferential treatment.

Next, Plaintiff points to Fowler's efforts to recruit from colleges and universities, as well as focusing his recruitment efforts on social media. Plaintiff claims that this is evidence that Fowler was targeting younger applicants for the TSE positions. Fowler testified that the PBJC is primarily responsible for posting the TSE vacancies but that the City's Department of Transportation will sometimes use social media or the website to reach out to potential applicants or coordinate with universities to promote these postings. (Doc. # 31-2 at 33). He also testified that he informed the PBJC of several professional organizations that would be relevant to these positions, including the Institute of Transportation Engineers ("ITE"), the American Society of Civil Engineers ("ASCE"), Congress for the New Urbanism, and likely the American Planning Association. (*Id.*). The City undertook broad recruiting efforts when promoting the TSE vacancies. Evidence that the City recruited for the position on social media and with colleges and universities does not indicate that it preferred candidates under the age of forty nor does it indicate that it was hostile to applicants above the age of forty. This is especially true when considering that Fowler informed the PBJC of specific professional societies that the job postings would be relevant to. Social media and universities were but two of the avenues that the City used to promote the TSE vacancies, and its decision to do so does not demonstrate a preference for applicants of a certain age group.

Plaintiff also points to comments made by Fowler, which he alleges demonstrate discriminatory animus towards older City employees. Plaintiff testified about an occasion when he and Fowler discussed the departure of Zeke Willis. Willis was an employee with the City, who had applied for a promotion, was not selected, and ultimately retired from his employment with the City. (Doc. # 31-1 at 20). Plaintiff testified that he told Fowler that he missed Zeke and Fowler responded with "Why? It's a good thing that he retired." (*Id.*). Plaintiff also claimed that in a meeting, Fowler had applauded the resignation of Natasha Bettis, who was over the age of forty at the time of her resignation. (*Id.* at 21-22). Fowler claims that comments applauding individuals moving on from their employment with the City were made because the organizational chart of the department is a pyramid, so not everyone would be able to advance. (Doc. # 31-2 at 37-38). He also stated that these comments were to prevent employees from feeling like they were stuck in their current positions, and that there were other opportunities for them. (*Id.*). Plaintiff's spin placed on Fowler's remarks do not support his age discrimination claim.

First, Plaintiff has failed to show any discriminatory actions made by Fowler or the City in connection with these comments. Both Willis and Bettis ended their employment with the City voluntarily, and Plaintiff has presented no evidence showing that Willis did not receive a promotion due to his age. Nor has Plaintiff shown how the statements allegedly made by Fowler are connected with the former employees' ages. Just because Fowler applauded the decisions to retire made by Willis and Bettis does not mean that he did so due to their age. Indeed, Plaintiff has presented no evidence that suggests the comments were based on those employees' ages. Mere comments applauding an employee's decision to retire or seek other employment cannot be automatically deemed discriminatory just because those employees belong to a protected class. To be clear, much more problematic comments have been determined not to indicate age

discrimination. *See, e.g., Melvin v. Fed. Express Corp.*, 814 F. App'x 506, 513 (11th Cir. 2020) (holding that comments questioning whether an employee wanted to continue to work given his age and suggesting that the plaintiff "let the young guys have it" were insufficient to create a triable issue of discriminatory intent without additional evidence.").[11]

Plaintiff also points to the fact that Fowler failed to affirmatively follow up with him in 2021-22 regarding whether he had completed his college coursework after their initial conversation. Plaintiff seems to be arguing that Fowler should have reached out to him after seeing his name on the Certificate of Eligibles to see whether he had completed his college degree and was now qualified. That argument does not cut ice. First, Plaintiff *did not* complete the degree requirement and any follow-up by Fowler would have simply revealed that he was still unqualified for the position. Second, when an applicant applies for the TSE position, they include their resume or an application, which should include all degrees obtained. (Doc. # 31-2 at 28). Thus, Fowler remained informed as to Plaintiff's degree status each time he applied. Fowler could reasonably have expected that the application – or Plaintiff himself – would make him aware of any changes in Plaintiff's educational qualifications. Even if Plaintiff could establish that Fowler intentionally chose not to make himself aware of his continued education efforts (or lack thereof) – and, to be clear, there is no evidence of that in the record – he has not established a convincing mosaic of evidence that failure to do so was based on his age or any other characteristic.

**b.    Pretext**

Plaintiff further argues that he has presented evidence that establishes that the degree requirement was pretext for denying him a TSE position because of his age. (Doc. # 40 at 20). He

---

[11] Fowler's supposed comments are far less overt than the supervisor in *Melvin*. Even in that case, the Eleventh Circuit held that one-off comments alone are insufficient to create a triable issue of discriminatory intent. This is especially true when the alleged comments are not attenuated to the employment decision.

points to the fact that the PBJC placed him on the Certificate of Eligibles after his initial appeal, meaning that the PBJC deemed him qualified to hold the position. (*Id.*). Plaintiff again argues that Fowler's failure to affirmatively follow up with him as to whether he had completed his degree is proof that the degree requirement was not the real reason that Plaintiff was not promoted, but a pretext for discriminatory motives. (*Id.*). Plaintiff asserts that he could have completed the degree requirements within six months as allowed by the job posting and that Fowler knew he was only two courses away from completing the degree. (*Id.* at 21). Finally, Plaintiff argues that a degree is not necessary to do the TSE job, because Plaintiff had assumed some TSE responsibilities. (*Id.* at 21-22). The court is not convinced by Plaintiff's pretext argument.

There are several scenarios in which a plaintiff could prove that a job requirement was pretext for discrimination. For instance, a job requirement that is strictly enforced against individuals over the age of forty but where exceptions are often made for individuals under the age of forty would be a pretextual job requirement. *See, e.g., Young v. United Parcel Serv., Inc*., 575 U.S. 206, 231 (2015) (holding that the plaintiff created a genuine issue of material fact under the Pregnancy Discrimination Act because she had shown accommodations were routinely made for others but not pregnant women). While *Young* is but one example, a pretextual job requirement case is generally one in which the requirement is enforced inconsistently or with the intent to exclude members of a protected class. Plaintiff has presented no such evidence.

Plaintiff's assertions here differ significantly from the situation in *Young*. First, he cannot show an inconsistency in the enforcement of the degree requirement. Each of the individuals chosen for interviews during the relevant time period had a bachelor's degree in a related field or were expected to complete the degree within six months. There is no evidence the City made routine exceptions for younger employees while denying exceptions for employees over the age

of forty. In fact, the record evidence is just the opposite. The City acted consistently with the degree requirement, and Plaintiff is not entitled to an exception based solely on his membership in a protected class. Plaintiff is also unable to show that the City – or the PBJC for that matter – instituted the degree requirement with the intent of excluding members of a protected class.

Plaintiff argues that he could have finished the degree requirement within six months and so the enforcement of the requirement against him is further evidence of pretext. This argument would be significantly stronger if he had actually made such a plan and communicated it to Fowler. However, the only argument presented by Plaintiff is that (1) he told Fowler in 2018 that he was two classes short of a college degree but (2) Fowler did not follow up. (Doc. # 40 at 20). Plaintiff argues that Fowler's knowledge that he lacked only two courses is sufficient to show that the City knew he could have completed the degree within six months. But, just because Plaintiff theoretically could have completed his degree within six months does not mean that he had any intent or plan to do so. Again, Plaintiff has provided no evidence to show that he communicated an intent to complete his degree while applying for a TSE position. Nor is there any evidence that he enrolled in classes, communicated with anyone at Auburn University about completing his degree, or otherwise explored options for finishing his degree while remaining employed with the City. In fact, he had not taken any additional steps to complete the two outstanding courses since his time at Auburn. Throughout Plaintiff's tenure with the City, he was always two credits away from earning a diploma. Thus, as far as Fowler or any other City decisionmaker knew, Plaintiff did not have the requisite college degree and had no intent to obtain one within six months.

Finally, Plaintiff argues that a degree is not necessary to perform the TSE position. In part, he relies on the U.S. Supreme Court's decision in *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971).

*Griggs* was a Title VII racial disparate impact case.[12] The Supreme Court held that "[n]othing in [Title VII] precludes the use of testing or measuring procedures; obviously they are useful. What Congress has forbidden is giving these devices and mechanisms controlling force unless they are demonstrably a reasonable measure of job performance." *Griggs*, 401 U.S. at 436. The Supreme Court in *Griggs* examined the legislative history of Title VII in detailed fashion to try to determine Congress's intent in adopting Section 703(h). *See id.* at 433-36. Section 703(h) provides in relevant part that it shall not "be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(h).

To begin with, the ADEA does not contain an analogous provision to section 703(h). But, even if it did, the Supreme Court did not find in *Griggs* that degree requirements were impermissible altogether. Instead, it found that performance tests must be "demonstrably a reasonable measure of job performance." *Griggs*, 401 U.S. at 436. The completion of degree coursework in engineering is one of a number of reasonable measures of future job success. Engineering is a highly technical field. Engineers are required to design and maintain systems and processes with many moving parts. The job requires extensive knowledge of mathematics, science, and physics, among other things. Second, the record reflects that the PBJC was responsible for establishing the degree requirement, not the City. Thus, to the extent that Plaintiff challenges the implementation of the degree requirement as discriminatory and unlawful, those claims would be

---

[12] The Eleventh Circuit held en banc in *Villarreal v. R.J. Reynolds Tobacco Co.* that Section 4(a)(2) of the ADEA only recognizes disparate impact claims for employees, not applicants. 839 F.3d 958, 963 (11th Cir. 2016). Plaintiff here is both employee and applicant but challenges the decision not to promote (*i.e.*, hire him in his capacity as an internal applicant). Plaintiff is proceeding under a disparate treatment theory in this case. To the extent Plaintiff relies on disparate impact case law, its usefulness is limited in evaluating his claims under a disparate treatment framework.

more appropriately brought against the PBJC. And, to the extent that Plaintiff is challenging the City's role in perpetuating the degree requirement – or the fact that Fowler used it as part of his basis for denying Plaintiff an interview – Plaintiff has failed to demonstrate that the degree requirement was discriminatory. This is all the more true because Kenneth Williams, who is older than Plaintiff, met the degree requirement. The record simply does not reflect that the degree requirement advantaged any one group of applicants over another. For these reasons, summary judgment for the City is proper on Plaintiff's age discrimination claim.

### c.    Title VII Gender Discrimination Claim

With respect to his gender discrimination claim, Plaintiff again relies on the evidence that Fowler had a pattern of promoting younger women to the City Hall TSE position. (Doc. # 40 at 24). He argues that Fowler included Livia Ryan on the interview panels for the TSE position after: 1) she had allegedly expressed a desire that men not work near her and 2) Plaintiff filed a complaint against her for verbal harassment. (*Id.*; Doc. # 31-2 at 86, 93). Plaintiff also claims that the degree requirement is pretext for gender discrimination for the same reasons he asserts in relation to his age discrimination claim.

First, as discussed above, there is no meaningful distinction between the TSE positions at City Hall and 6th Street for the purposes of this lawsuit. There is no material difference between the TSEs at City Hall and 6th Street when considering the failure to promote claim. During the relevant period, four men (Samuel Parsons, Kenneth Williams, Mukti Patel, and Sunny Desai) were hired for TSE positions. (Doc. # 31-2 at 12-13). This evidence tends to show that qualified men managed to acquire TSE positions.

Second, the inclusion of Livia Ryan, who Plaintiff allegedly had unrelated issues with, on interview panels is not nearly enough to establish a convincing mosaic of discrimination –

especially given that Plaintiff never received an interview for a TSE position. In fact, the record does not demonstrate that Ryan played *any* role in the TSE hiring process where she would have had authority to determine whether Plaintiff was offered a TSE position or even an interview for a TSE position. Nor can it be said in the abstract that Ryan's inclusion is evidence of a broader pattern of discrimination against men. The record makes plain that men were hired for the TSE position that were subject to exactly the same interview process.

Finally, as explained above, Plaintiff has failed to establish that the degree requirement established by the PBJC is pretext for discrimination. The City merely upheld requirements set by the PBJC. Accordingly, Plaintiff has not met his burden of establishing a convincing mosaic of gender discrimination that would allow him to survive summary judgment. *Smith*, 644 F.3d at 1328.

### d.    Title VII and § 1983 Race Discrimination Claims

Plaintiff urges that he has created a convincing mosaic of evidence that would allow a reasonable jury to find racial discrimination based on "the same circumstantial evidence and arguments as his age and gender claims." (Doc. # 40 at 24). To be clear, he contends that the City discriminated against mixed-race individuals, rather than full-race individuals of various races. That is, he does not claim that he was discriminated against because he is white or because he is Native American. He argues that the City cannot use the hire of Amy Zari as evidence of non-discrimination because the record is not clear as to whether Zari is mixed-race or whether the City believed her to be mixed-race at the time the employment decision was made. (*Id.*).

The court has already determined that the circumstantial evidence offered by Plaintiff is insufficient to survive summary judgment on both the age discrimination and sex discrimination claims. Yet, Plaintiff argues the same evidence creates a triable issue of fact related to his race

discrimination claim. There is even less support for that claim. Plaintiff has not pointed to any evidence of discriminatory animus towards mixed-race individuals.

Plaintiff argues that the City knew of his mixed-race status because he "discussed his Native American heritage with coworkers[,] which would permit the inference that it was known in the workplace that he was mixed race." (Doc. # 40 at 25). This "evidence" is insufficient to establish knowledge of his mixed-race status for several reasons. First, Fowler stated in his deposition that he did not know Plaintiff was mixed race. (Doc. # 31-2 at 36). There is simply no evidence in the record to rebut Fowler's statement. Plaintiff's assertion that he talked about his heritage openly at work is not evidence that Fowler himself was aware of it. Second, even if the court were to accept Plaintiff's contention that Fowler had heard Plaintiff say these things at work, it only serves as evidence that Plaintiff talked about his Native American heritage – *not* his status as a mixed-race individual. To reiterate, Plaintiff does not claim that he suffered racial discrimination as a Native American; rather, he claims that he was discriminated against as a mixed-race individual (as compared to non-mixed-race individuals). Thus, even if the court were to make the logical leap that Fowler knew about his Native American heritage, it does not establish that Fowler knew he was mixed-race. Finally, Plaintiff also has not shown that Fowler ever displayed *any* discriminatory animus against mixed-race individuals.

As to the promotion of Amy Zari, the City argues that her promotion – as a mixed-race woman – rebuts Plaintiff's claims of discrimination. (Doc. # 34 at 14). Plaintiff claims that Zari's documentation identifies her as Asian (not mixed-race). (Docs. # 40 at 25; 31-2 at 12-13). Fowler testified that he believes Zari is mixed-race but it is unclear whether he developed that belief before or after the decision to hire her for the TSE position. (Doc. # 31-2 at 112). In any event, in a case relying on circumstantial evidence, the burden is on Plaintiff to show that there is a convincing

mosaic of circumstantial evidence of discrimination. *See, e.g., Jenkins*, 26 F.4th at 1250. Unlike *McDonnell Douglas*, the burden never shifts to Defendant to explain why it made a decision. Thus, the fact that it is unclear whether Fowler knew Zari was mixed-race when he hired her is irrelevant. The relevant inquiry is whether Plaintiff has presented enough evidence to allow a reasonable jury to find that he was discriminated against on the basis of race. *Id.* Here, Plaintiff has not pointed to *any* evidence – direct or circumstantial – that would tend to show Defendant acted with any discriminatory intent when it chose not to hire him for a TSE position. He has failed to provide circumstantial evidence of mixed-race employees or applicants being treated differently by the City. Therefore, the City is entitled to summary judgment on Plaintiff's race discrimination claim.[13]

### iii.    Mixed Motive Theory

Plaintiff also attempts to establish discrimination through a mixed-motive theory, which is only available on his Title VII race and gender discrimination claim. To survive summary judgment in a mixed-motive case, a plaintiff must produce "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff and; (2) [a protected

---

[13] Plaintiff also alleges a violation of 42 U.S.C. § 1981 via § 1983. To establish liability against a municipality under § 1983, Plaintiff must establish that the alleged constitutional violation resulted from a "policy" or "custom" of the municipality. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). Plaintiff must also show that the municipality's action was "taken with the requisite degree of culpability…with deliberate indifference to its known or obvious consequences." *Davis ex rel. Doe v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000). Putting these elements together, to impose § 1983 liability on a municipality, Plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Defendant moved for summary judgment because Plaintiff had failed to make this showing, and Plaintiff has not responded to Defendant's arguments. Because Title VII and § 1981 claims are evaluated together, Defendant would be entitled to summary judgment for the reasons discussed above, even if Plaintiff had been able to make the additional *Monell* showing. *Kidd v. City of Jasper*, Case No. 6:17-CV-1180-TMP, 2018 WL 2766058, at *4 (N.D. Ala. June 8, 2018).

characteristic] was *a* motivating factor for the defendant's adverse employment action." *Phillips*, 87 F.4th at 1327 (quoting *Quigg*, 814 F.3d at 1232-33) (emphasis in original).

As explained above, Plaintiff has failed to show that gender or race was a contributing factor in the City's decision not to hire him for a TSE position. It bears repeating that when asked to identify specific instances of Fowler discriminating against men, white people, or Native Americans, Plaintiff failed to do so. (Doc. # 31-1 at 19). Plaintiff admits that he was not subject to any race-based statements or harassment and only points to Livia Ryan's statements as evidence of gender discrimination. (Doc. # 31-1 at 17-19). That evidence is sparse at best and is wholly untethered to the decision not to hire him as a TSE. *See Rojas*, 285 F.3d at 1343 (holding that an isolated comment unrelated to the adverse employment action was insufficient to create a genuine issue of material fact as to pretext when considered alongside other circumstantial evidence). Plaintiff has identified nothing, other than his lacking a college degree, that played a role in the City's decision not to give him an interview. Because he cannot show that a protected characteristic was *a* factor in the decision not to hire him as a TSE, the City's Motion for Summary Judgment on Plaintiff's mixed-motive claim is due to be granted.

**B.    Pay Disparity**

Plaintiff also asserts a "pay disparity claim" in conjunction with his failure to promote claim. However, during the relevant time period, Plaintiff was paid at a premium step two of pay grade twenty-two, which is nearly the maximum salary for a Traffic Analyst. (Doc. # 31-1 at 22). A TSE is paid at a grade twenty-six. (Doc. # 31-2 at 99). The pay scales for these positions are determined by the PBJC and are part of a merit-based system. (*Id.* at 13). The City does not have authority to unilaterally override Plaintiff's assigned pay grade. (*Id.* at 13). What little discretion the City does have was actually exercised to authorize bonus pay for Plaintiff due to his assumption

of additional job responsibilities. (*Id.* at 22). Plaintiff argues that because he was not selected for the TSE position, he remained at pay grade twenty-two while "the younger females of single race who received the TSE jobs in City Hall were started in the middle steps for grade 26 and given the chance to progress through the steps." (Doc. # 40 at 25-26). This argument does not support a pay disparity claim. The proper comparator in a pay disparity case is someone at the same level with the same qualifications being paid at a different rate. *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019) (en banc) ([A] plaintiff must show that she and her comparators are 'similarly situated in all material respects.'"). The individuals identified by Plaintiff were all (1) selected for a TSE position and possessed the requisite bachelor's degree and (2) hold a different title than Plaintiff. They are not similarly situated to Plaintiff. Their pay is only relevant to the amount of damages Plaintiff might be awarded had he been able to establish his failure to promote claim (he was not).

There is more. The record reflects that Plaintiff earned more as a Traffic Analyst than Zari, Bigham, or Hughes did as entry-level TSEs. (Docs. # 31-2 at 154, 187; 31-3 at 2-3, 132). Thus, he cannot show that a pay disparity even existed between him and the entry-level TSEs.[14]

Plaintiff also claims that Livia Ryan was paid more than him for her performance of TSE duties. The only record evidence cited by Plaintiff is Plaintiff's own declaration, which states that "Livia Ryan who is a TSE did make more money than me and continues to make more money than me." (Doc. # 39-1 at 6 ¶ 3(n)). Again, Plaintiff's contention misses the mark. Livia Ryan is a TSE, a position that Plaintiff applied for and for which he was not selected. Therefore, she is not similarly situated to Plaintiff, and her salary is irrelevant to his pay disparity claim. Thus, the City's Motion for Summary Judgment is due to be granted on the pay disparity claim.

---

[14] The court notes that throughout this litigation, Plaintiff has been promoted to a Senior Planner, which is paid at a grade twenty-six. (Doc. # 31-3 at 2). Plaintiff is at step nine within that grade and paid $41.26 per hour. (*Id.*).

C.      **Motion to Strike**

Plaintiff moves to strike the affidavit of Sonji P. Campbell from the record because he asserts that the City failed to disclose this witness during discovery. (Doc. # 38). Federal Rule of Civil Procedure 37(1) states that if a party fails to provide information or identify a witness under Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion…unless the failure was substantially justified or is harmless." Sonji P. Campbell is the Deputy Director of Finance for the City. In her affidavit, Campbell summarizes and authenticates payroll records that were produced to Plaintiff during the discovery process.

Plaintiff argues that failing to disclose Campbell as a witness was not harmless because Plaintiff was unable to cross-examine her. (Doc. # 38 at 4). However, the City produced the underlying payroll documents during written discovery, and Plaintiff had the opportunity to ask Fowler, the City's Rule 30(b)(6) witness, questions about them during his deposition. Campbell's affidavit offers little beyond synthesis and authentication of the underlying information that Plaintiff had access to before Defendant's summary judgment motion. The City argues that the omission of a payroll representative was not intentional and that the sole purpose of the affidavit is to authenticate the payroll records. (Doc. # 42). Plaintiff did not file a Response to the City's Reply Brief.

The court agrees with the City that Plaintiff was not prejudiced by the incidental omission of the records custodian. Plaintiff had access to the underlying records – which are highly relevant to his claims – before deposing the City's 30(b)(6) witness, Fowler. Plaintiff had a full and fair opportunity to ask Fowler questions about the records if he questioned their authenticity or value to this case. Therefore, Plaintiff's Motion to Strike is due to be denied.

**IV.    Conclusion**

For all the reasons above, Defendant's Motion for Summary Judgment (Doc. # 33) is due to be granted and Plaintiff's Motion to Strike (Doc. # 38) is due to be denied. A separate order consistent with this Memorandum Opinion will be entered concurrently.

**DONE** and **ORDERED** this March 5, 2026.

_____
**R. DAVID PROCTOR**
SENIOR U.S. DISTRICT JUDGE